IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

MANCOR INDUSTRIES, INC.,

    Plaintiff,

v.              CIVIL ACTION NO. 5:08-cv-00278

TRI-CITIES POWER AUTHORITY, et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

  Pending before the Court are the follow motions: Plaintiff's Motion to Remand [Docket 3]; Joint Motion by Defendants, City of Hinton, City of White Sulphur Springs, and City of Philippi, to be Dismissed from this Action [Docket 8]; Defendant's Third Party Complaint against William Mitchell, Individually and Doing Business as Talon Consulting and Lightning Strikes Twice and Mancor Industries, Inc. [Docket 10-2]; and Plaintiff's Motion for Preliminary Injunction [Docket 32]. For the reasons discussed below, Plaintiff's motion to remand is **GRANTED**.

*I. BACKGROUND*

  This action arises out of a complaint for declaratory judgment filed by Plaintiff Mancor Industries, Inc. ("Mancor") in the Circuit Court of Summers County, West Virginia, on March 28, 2008. (Docket 1 ¶ 1.) Defendants are the City of Hinton, the City of Phillipi, the City of White Sulphur Springs ("Cities") and Tri-Cities, an intergovernmental entity composed of representatives

of the aforementioned West Virginia cities.[1] (Docket 1-2 ¶ 2.) The complaint states that on September 18, 2000, Plaintiff entered into a five-year Consulting and Development Agreement with Defendant, (Docket 1-2 ¶ 4), for the development and implementation of a hydroelectric power plant at Bluestone Dam in Summers County, West Virginia. (Docket 3 at 4.) Plaintiff claims that the agreement could be and was extended by mutual agreement of the parties. (Docket 1-2 ¶¶ 5-6.) Plaintiff also asserts that it has complied with the terms of the agreement but has not received payment from Defendant. (*Id.* ¶¶ 14-17.) Therefore, Plaintiff seeks a portion of Defendant's net revenues, continued management of the operations of the plant, the development fee it believes is owed, and all monies due for their contractual performance under the agreement to date.[2] (*Id.* ¶ 9.) Defendant filed a timely notice of removal pursuant to 28 U.S.C. § 1441(a) on April 25, 2008, and filed its answer on May 22, 2008. Defendant also filed a third-party complaint against William Mitchell on May 23, 2008.

Defendant contends that this Court has jurisdiction under both 28 U.S.C. § 1331 and 28 U.S.C. § 1332. First, Defendant asserts that this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs. (Docket 1 ¶ 4.) According to the notice of removal, William R. Mitchell, the "main principal" of Mancor, is a

---

[1] The individual cities who were named as defendants in this action have not answered Plaintiff's complaint other than filing their joint motion to be dismissed from this action. Therefore, the term "Defendant" as used in this memorandum opinion only refers to Defendant Tri-Cities.

[2] Defendant claims that the agreement expired on September 18, 2005, (Docket 6 ¶ 4), and any delays in the completion of the project were due to acts or omissions of Plaintiff. (*Id.* ¶ 8.) Defendant also avers that it owes no reimbursement of costs and fees. (*Id.* ¶ 11.) Conversely, it alleges Plaintiff owes it expenses due to delays Plaintiff has caused, (*Id.*), in addition to punitive damages. (*Id.* ¶ 15.)

resident of the state of Colorado, and, therefore, the parties have diversity of citizenship. (*Id.*)[3] Further, Defendant contends that the amount in controversy exceeds $75,000 because "Plaintiff has requested it be awarded a Declaratory Judgment against Defendants in the amount of [$9,288,250.00]." (*Id.* ¶ 6.)  Second, Defendant asserts that this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331. Defendant alleges:

> The federal enabling legislation underlying the facts and dispute in this case . . . provided for the responsibility and obligations of the parties including securing [sic] a federal licensing . . . . In addition to other requirements, the amended federal law . . . requires the Defendants to conclude a Tri-Party Agreement with the Secretary of the Army, acting through the United States Army Corps of Engineers, and the Secretary of Energy, acting through the Southeastern Power Administration. In addition, the Defendants are required to negotiate with the Army Corps of Engineers concerning coordination of the hydroelectric facilities' construction with the ongoing Corps' Dam Safety Assurance Program, as well as the completion of the NEPA Process associated with the hydroelectric facilities, and several other terms included in the federal legislation. Any allegations by Plaintiff regarding a breach of contract or contractual obligations, written or implied, between the parties and involving multiple parties, including federal agencies, could not be properly evaluated and ascertained without reference to and interpretation of Federal statutes, rules and regulations, and questions of federal laws and regulations.

(*Id.* ¶ 7.)

On May 8, 2008, pursuant to 28 U.S.C. § 1447, Plaintiff filed a timely motion to remand. Plaintiff argues that this case is merely one of contractual interpretation, and the dispute does not involve a substantial federal question of law. (Docket 3 at 7.)  Furthermore, Plaintiff claims to be a West Virginia corporation with its principal place of business located in Raleigh County, West Virginia. (*Id.*)

---

[3] Defendant also asserts that "[t]here are various out of state [sic] corporations, entities, federal agencies, to whom both parties have incurred debts and obligations in connection with the matter in dispute, and these issues, which could be an integral part of these proceedings, create and establish further diversity of citizenship." (*Id.* ¶ 8.)

In its response to Plaintiff's motion to remand, while reasserting the existence of diversity, Defendant claims that the nominal incorporation of Mancor in the state of West Virginia should be disregarded. (Docket 5 at 8.) Defendant asserts that Mr. Mitchell, a Colorado resident, is the true party in interest in this matter, (*Id.*), and Defendant is "unaware that Mancor, as a corporation, has any separate will, mind, or existence of it [sic] own, apart from Mr. Mitchell." (*Id.* at 9.) Defendant supports its contention by stating that it has had no communications with any individual representing Mancor other than Mr. Mitchell and part-owner Jack Whittaker. (*Id.*) Defendant's response regarding federal question jurisdiction reasserts that whether Plaintiff adequately performed under the Consulting and Development Agreement as well as the relief demanded by Plaintiff require resolution of issues relating to federal statutes that govern the Bluestone Hydroelectric Project. (*Id.* at 5.)

## II. STANDARD OF REVIEW

"The burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citation omitted). Accordingly, in this case, Defendant has the burden to show the existence of federal jurisdiction by a preponderance of the evidence. *Johnson v. Nutrex Research, Inc.*, 429 F. Supp. 2d 723, 726 (D. Md. 2006) (citing *Schwenk v. Cobra Mfg. Co.*, 322 F. Supp. 2d 676, 678 (E.D. Va. 2004)). "Because federal courts are courts of limited jurisdiction, removal statutes must be construed strictly against removal." *McCallister v. Purdue Pharma L.P.*, 164 F. Supp. 2d 783, 788 (S.D. W. Va., 2001) (citing *Mulcahey*, 29 F.3d at 151). Thus, in deciding whether to remand, the Court "should resolve all doubts, concerning the validity of a removed civil action, in favor of remand." *Thorne v. WLR*

*Foods, Inc.*, 111 F. Supp. 2d 744, 745 (N.D. W. Va. 2000) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941); *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999)).

### III.  REMOVAL JURISDICTION

Congress has given parties the right to remove a case from state to federal court under 28 U.S.C. § 1441.  That statute states, in relevant part:

> [A]ny civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).  Article III of the United States Constitution provides, in pertinent part, that "the judicial Power shall extend to Cases . . . arising under . . . the Laws of the United States . . . ; [and] to Controversies . . . between Citizens of different States."  Similarly, Congress provides that original federal jurisdiction is based in both federal question jurisdiction, 28 U.S.C. § 1331 (1988), and diversity-of-citizenship jurisdiction, 28 U.S.C. § 1332 (1988).  The Court will discuss each type of subject matter jurisdiction as applied to the facts of this case in turn.

   *A.     Diversity of Citizenship*

Congress has authorized the federal courts to exercise diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states."  28 U.S.C. § 1332(a)(1).  It is well established that "[f]or purposes of determining whether a federal court possesses subject matter jurisdiction based on diversity of citizenship, a corporation is deemed 'to be a citizen of any State by which it has been incorporated ***and*** of the State where it has its principal place of business.'"  *Columbia Gas Transmission Corp. v. Burdette Realty Imp., Inc.*, 102 F.Supp.2d 673, 675 (S.D. W. Va. 2000) (citing 28 U.S.C. § 1332(c)(1)) (emphasis added).

In the case at hand, the parties do not dispute that the matter in controversy far exceeds the $75,000 threshold required for diversity jurisdiction. However, the parties disagree about whether diversity of citizenship exists. Plaintiff asserts that it is a "West Virginia Corporation organized under the laws of the State of West Virginia." (Docket 3 at 2.) Defendant does not contest that Mancor is incorporated in West Virginia. Instead, Defendant asserts that the "nominal incorporation of Mancor in the state of West Virginia should be disregarded" for purposes of diversity jurisdiction. (Docket 5 at 8.) Plaintiff claims that it is "unaware that Mancor, as a corporation, has any separate will, mind, or existence of it [sic] own, apart from Mr. Mitchell." (*Id.* at 9.)

However, this Court agrees with its sister court in the Eastern District of Virginia, which recognized that "courts that have acknowledged the alter ego theory in the diversity context have specifically restricted its use to the expansion of corporate citizenship, and thus the restriction of diversity jurisdiction, and have rejected its application in the converse context that the alter ego theory may not be used to extend jurisdiction." *Maday v. Toll Bros. Inc.*, 72 F. Supp. 2d 599, 607 (E.D. Va. 1999)(citing *J.A. Olson Co. v. City of Winona*, 818 F.2d 401, 414 (5th Cir.1987) ("[T]he alter ego doctrine may not be used to create diversity jurisdiction by ignoring the principal place of business of a subsidiary corporation and imputing to it the principal place of business of the parent."); *Needham v. Wedtech (USA), Inc*., 918 F.Supp. 353, 358 (N.D. Okla., 1996) ("For purposes of diversity jurisdiction, the alter ego doctrine cannot be used to create subject matter jurisdiction by imputing one entity's principal place of business to another entity."); 15 Moores Federal Practice, § 102.56[7][b] ("The alter ego doctrine may be used to increase the number of states of citizenship for the purpose of reducing the reach of diversity jurisdiction, but may not be

used to extend jurisdiction.")). Therefore, Defendant cannot manufacture diversity jurisdiction by asserting that Mancor is the alter ego of Mr. Mitchell.[4]

Based on the pleadings of the parties, Mancor is incorporated in West Virginia. Because 28 U.S.C. § 1332(c)(1) provides that a corporation is a citizen in the state in which it is incorporated, this Court need not determine whether Mancor's principal place of business is located in West Virginia in deciding that Mancor is a citizen of West Virginia. In addition, it is undisputed that Tri-cities is a citizen of West Virginia. Therefore, both adverse parties are citizens of West Virginia, and Defendant has failed to plead facts sufficient for the Court to infer diversity jurisdiction.

  B.  *Federal Question Jurisdiction*

Having determined that there is no diversity of citizenship between the parties, "the propriety of removal depends on whether the case falls within the provisions of 28 U.S.C. § 1331." *Mulcahey*, 29 F.3d at 151. Under § 1331, "[f]ederal courts have original jurisdiction over all civil actions that 'arise under' the Constitution or laws of the United States." *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) (citing 28 U.S.C. § 1331).

"[T]he question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 807 (1986) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983)). There are two ways a case can arise under federal law: (1) where federal law creates the cause of action, and (2) where state law creates the cause of action, but the plaintiff's demand necessarily

---

[4] Because Defendant's allegation that Mr. Mitchell is "the true party at interest" is irrelevant for the purposes of determining diversity jurisdiction, the Court declines to determine whether the facts alleged establish that Manor is the alter ego of Mr. Mitchell.

depends on the resolution of a substantial question of federal law.  *See Mulcahey*, 29 F.3d at 151. The Fourth Circuit has stated:

> In cases where federal law creates the cause of action, the courts of the United States unquestionably have federal subject matter jurisdiction.  If, however, state law creates the cause of action, as in the instant case, [the court will] apply a different test. In this instance, federal question jurisdiction depends on whether the plaintiff's demand necessarily depends on resolution of a substantial question of federal law.

*Id.* (citations and internal quotations omitted).  A plaintiff's demand necessarily depends on resolution of a substantial question of federal law when "the vindication of a right under state law necessarily turned on some construction of federal law."  *Franchise Tax Bd.*, 463 U.S. at 9.  The Supreme Court has held that the claim must not be "merely colorable," and must rest upon a "reasonable foundation." *Merrell Dow*, 478 U.S. at 809 n.5 (quoting *Smith v. Kan. City Title & Trust Co.*, 255 U.S. 180, 199 (1921)).  In making this determination, a court must be cognizant of "congressional intent, judicial power, and the federal system."  *Merrell Dow*, 489 U.S. at 810.

In *Merrell Dow,* the statutes in question contained no private right of action.  Therefore, the court examined whether the moving party had proven with sufficiency that the complaint created a substantial question of federal law. The Plaintiff in *Merrell Dow* alleged that a drug was misbranded in violation of the Federal Food, Drug, and Cosmetic Act (FDCA) and that the violation constituted negligence, which proximately caused the plaintiff's injuries. The court focused on the fact that there was no federal cause of action in the FDCA in deciding that the plaintiff's allegation was insufficient to establish federal jurisdiction.  The court remanded the action because the complaint did not meet this burden.

Here, as in *Merrell Dow*, the federal statutes at issue contain no private right of action. Defendant argues that federal jurisdiction is proper despite the fact that the complaint contains only a state law contract cause of action because

> the questions of whether Mancor adequately performed under the Consulting and Development Agreement that expired in 2005, and whether any actions taken by MANCOR or William Mitchell after that expiration represented "continued fulfillment of its responsibilities" or "performance and continued compliance" under the terms of any alleged extension of that agreement, . . . are rooted in the provisions of two federal statutes specifically enacted to enable TCPA to develop the Bluestone project: Water Resources Development Act of 2000, Pub. L. No. 106-541 § 547, 114 Stat. 2572, 2676-78 (2000) ("Bluestone Legislation I"); and Energy and Water Development Appropriations Act, 2006, Pub. L. No. 109-103, 119 Stat. 2247, 2256-57 (2005) ("Bluestone Legislation II").

(Docket 5 at 5.) Defendant contends that because Bluestone Legislation I and II created the contractual terms that laid the groundwork for the complaint in this litigation that "the adequacy of Mancor's and /or William Mitchell's alleged contractual or quasi-contractual performance can only be understood in light of the requirements of those federal enabling statues." (*Id*. at 5.)

Defendant's argument fails because, as in Merrell Dow, there is no private cause of action contained in the Bluestone statutes and Defendant's argument falls far short of proving that a substantial question of federal law exists in the complaint.

Defendant also asserts that because contract negotiations involved several federal actors and because the proposed dam is on federal property that this action should be resolved in federal court. It may be true that negotiations for the project did involve the Army Corp of Engineers, the Department of Energy, and the TCPA, and the dam is being built on federal property. However, these facts do nothing to advance Defendant's argument, and Defendant has provided no precedent to indicate that they do.

9

Finally, Defendant argues that if this issue is not resolved at a preliminary stage, "defenses to Mancor's claims, and counterclaims by TCPA against Mancor, William Mitchell, Talon Consulting, and Lightening Strikes Twice, will require the interpretation of the two federal Bluestone Statutes, as well as other federal laws . . . ." (Docket 5 at 7.) However, the Supreme Court has stated, "A defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow,* 489 U.S. at 808. Therefore, defendant's argument is without merit. Thus, because Defendant has failed to establish that federal question jurisdiction exists, the Court **FINDS** that Defendant has failed to meet its burden to prove jurisdiction.

## IV.  CONCLUSION

For the reasons stated above, Plaintiff's Motion to Remand [Docket 3] is **GRANTED**. Thus, the Court **REMANDS** this case to the Circuit Court of Summers County for further proceedings.[5]

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:       November 24, 2008

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

[5] Because this Court finds that it lacks jurisdiction, it must leave the other motions for resolution by the state court following remand.